UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| FELIPE MULERO : | |
|     Plaintiff : | |
| : | Case No. 3:02CV932 (CFD) |
| v. : | |
| : | |
| ONE CONSOLIDATED SCHOOL : | |
| DISTRICT OF NEW BRITAIN, CT : | |
|     Defendant : | May 17, 2005 |

MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ANSWERS TO QUESTIONS AT
DEPOSITION AND ORDER AWARDING EXPENSES
INCLUDING ATTORNEY'S FEES

NATURE OF THE CASE:

    This amended complaint was originally set in two counts. Count One is based on Title VII of the Civil Rights Act of 1964. The Plaintiff alleges that "the defendant discriminated against him in employment on the grounds of having retaliated for having previously filed complaints of employment discrimination; national origin: Puerto Rico". Amended Complaint dated April 28, 2003, Count One, Paragraph One. Count Two was based on related state law claims. Summary judgment had been

previously granted by the Court in Count Two. The Plaintiff further alleges that as a result of the Defendant's conduct, the Plaintiff has suffered severe emotional distress and economic loss.

ANSWERS SOUGHT AT DEPOSITION:

1. QUESTIONS REGARDING PLAINTIFF'S FINANCIAL SITUATION AND ABILITY TO SEEK MEDICAL TREATMENT.

```
Q.  With whom do you reside at that address?
A.  With myself.
Q.  Is that an apartment or is that a house that you own?
A.  Home.
Q.  Do you own the home?
A.  I don't see how that question is relevant to this case,
    so I'm declining to answer the question.  That's
    personal financial information which has nothing to do
    with this case.
Q.  Well, yes, it does because one of your claims is that
    you can't even go to a doctor because you don't have no
    money and you can't seek medical attention.
A.  It's irrelevant.  I disagree with that.  It has nothing
    to do with this case.  This is of a financial nature
    and has nothing to do with this case.
Q.  Okay.  One of the agreements that we had is that you
    would just object as to form.
A.  I object.  I am.  I'm sorry, I'm objecting to that
    question.
Q.  Excuse me, sir, you would object as to form to my
    questions.  Relevance is at the time of trial,
A.  I object to the form of the question.
Q.  You're refusing to answer the question?
A.  I'm refusing to answer the question.
```

(Transcript of April 21, 2005, page 8 lines 12-24 and page 9 lines 1-15)

```
Q.  You lived there by yourself?
A.  Yes
Q.  Was that an apartment or was that a home?
A.  It was a home.
Q.  One-family home?
A.  No. That, I believe, has nothing to do with this case
    either.
Q.  So, you refuse to answer that question too?
A.  Yes.  I'll give you the address.
Q.  I will let you know right now I will be filing for
    sanctions.
A.  You may do that.  That is your right.
```

(Transcript of April 21, 2005, page 10 lines 22-24 and page 11 lines 1-10)

2. EMPLOYMENT HISTORY.

```
Q.  All right.  When was the first full-time job that you
    had?
A.  I can't tell you specifically.  That's just – that's
    something that's just – I mean, I can't recall that.
Q.  All right.  When you finished Capitol Community, you
    said that you went to work.  Do you recall where you
    went to work at that time?
A.  I can't be sure.  I had – it's been so long.  It's been
    so long since that time period and the memory escapes
    me.  Rather than say something that may not be correct,
    I prefer to say I do not recall.
```

(Transcript of April 21, 2005, page 15 line 24 and page 16 lines 1-12)

```
Q.  Okay.  What is the first full –
    . . .
A.  I cannot tell you specifically about my work history
    because I'm not sure about that.  You're asking
    questions that are just too difficult for me to answer
    correctly.  That's why I'm refusing to answer questions
    that are too far.
```

(Transcript of April 21, 2005, page 17 lines 2 and 6-10).

    Q.  Where were you doing the substituting work?
    A.  I was doing it all over the vocational school system?
    Q.  Can you give us some examples of places you worked?
    A.  That escapes me. It was all over.
    Q.  Do you recall any towns for which you worked?
    A.  Not exactly.

(Transcript of April 21, 2005, page 23 lines 5-12)

    Q.  Okay. How long did you work for the Norwich Technical School System?
    A.  I can't be exact. I don't know. I don't recall.
       . . .
    Q.  Who transferred you?
    A.  I couldn't be exact. I couldn't tell you that.
    Q.  Did you have to apply to the other school districts?
    A.  I don't recall.
    Q.  Can you tell us what the other school districts were? Where were they?
    A.  That escapes me. I know where I started, but I was all over the place after that.
    Q.  Okay. What is the next – who is the next employer that you can recall after the Norwich Technical School System?
    A.  I answered that question before. I was moving all over the place. I don't recall exactly the schools. I was all over.
    Q.  You don't –
    A.  The Vocational Technical School System is the entire State of Connecticut, so I couldn't be specific. I decline to answer questions where I can't be specific.

(Transcript of April 21, 2005, page 24 lines 7-10 and 19-24 and page 25 lines 1-15)

    Q.  Okay. And why is it that you left the Vocational School System?
    A.  I don't recall.
    Q.  Did you leave voluntarily?
    A.  I don't recall.

> Q. Did they terminate your contract?
> A. I do not recall.
> Q. Were you ever disciplined while being employed by the Vocational School System?
> A. I don't recall
> Q. Were you ever investigated by the Vocational School System or any of its administrators?
> A. I have to retract the prior question.
> Q. Which one? About the discipline?
> A. Yeah. I was reprimanded.
> Q. Okay. And what were you reprimanded for?
> A. I can't recall. It was a bunch of – one of them was shining my shoes in class. One of them was that. I remember that part.

(Transcript of April 21, 2005, page 26 lines 7-24 and page 27 lines 1-2)

> Q. Okay. When you stopped working for the Vocational School System, do you recall by whom you were employed next or the first person you were employed by?
> A. I've already answered that question. Norwich Technical High School.
> Q. All right. But when you stopped in, I think –
> A. I don't recall.
> Q. Okay. After 2001, who was the first full-time employer that you do recall?
> A. After 2001?
> Q. Yes.
> A. I don't know. I can't remember.

(Transcript of April 21, 2005, page 29 lines 23-24 and page 30 lines 1-12)

> Q. Have you been a substitute teacher at any other district besides New Britain?
> A. I stated before, when I first began in 1991 I was a substitute teacher for the vocational system?

    Q.  Okay.  Other than the vocational system and New Britain, anywhere else.
    A.  I don't recall.

(Transcript of April 21, 2005, page 51 lines 18-22 and page 52 lines 1-2)

    Q.  What school districts have you applied for jobs?
    A.  I don't recall.  Several. Several.
    Q.  Which ones?
    A.  Too many to mention.  I don't recall exactly which ones.
    Q.  Do you recall any of them?
    A.  New Britain.
    Q.  Other than New Britain?
    A.  No. It doesn't come to mind.
    Q.  Is there any information that you have that would help you –
    A.  I've applied in the whole State of New York.  Which school districts, I couldn't tell you.
    Q.  What about Connecticut?
    A.  I don't recall.
    Q.  Do you recall not applying or you don't recall which school districts you have applied to?
    A.  I don't recall which school districts I've applied to.
    Q.  Is it your testimony that you have applied to other school districts within Connecticut?
    A.  I believe so.  I can't be sure, though.  I believe so.  I've been applying for the State of New York primarily.
    Q.  We're talking about Connecticut right now.  Please listen to my questions.
    A.  I don't recall.

(Transcript of April 26, 2005, page 163 lines 8-24 and page 164 1-11)

    Q.  Will you give me an authorization to receive your work history through the Vocational –
    A.  Absolutely not.

(Testimony of April 26, 2005, page 173 lines 16-18)

```
Q.  Are you working anywhere currently?
A.  No.
Q.  When is the last time that you worked anywhere?
A.  I don't recall.
```

(Testimony of April 26, 2005, page 222 lines 18-22)

```
Q.  When was the last time you worked?
A.  I don't recall.
Q.  Have you held a job within the last four to five years?
A.  I can't answer that.  I don't recall.  I must have.
```

(Testimony of April 26, 2005, page 223 lines 5-10)

```
Q.  So, you can't tell us your past employment history?
A.  I have difficulty answering those questions, so rather
    than answering them incorrectly, I choose not to answer
    them because I cannot be held accountable for answers
    that I'm not fully aware of.
Q.  So, you can't tell us who your past employers were?
A.  It's difficult to.
Q.  It's difficult to or you're not able to?
A.  I'm not able to at this time.  I have difficult.
Q.  When will you be able to tell us what your past
    employment is?
A.  I don't see how it's relevant to this case.  This case
    is Felipe Mulero versus the New Britain School District
    and I'm keeping it focused on that case.  That's why it
    is stated that way.
Q.  Mr. Mulero, do you refuse to tell me who your past
    employers were?
A.  At this time I can't tell you what my past employer is
    because of my –
Q.  And the reason is?
A.  Because of my lapse of memory, my ability to recall.
```

(Testimony of April 26, 2005, page 226 lines 3-23 and page 227 lines 1-4)

    Q.  Mr. Mulero, do you know what you are certified to teach?
    A.  Right now?
    Q.  Yes.
    A.  I'm not exactly sure, but I know I have certifications in the State of Connecticut.
    Q.  To Teach what?
    A.  That memory escapes me at this time.
    Q.  So, sitting here today you don't know what you're certified to teach?
    A.  That memory escapes me right now.

(Testimony of April 26, 2005, page 246 lines 1-11)

    3.  MEDICAL TREATMENT.

    Q.  Okay.  Earlier you told me that you attended one of the depositions before, correct, and it was in the motor vehicle accident?
    A.  Uh-huh.
    Q.  And when did that accident happen?
    A.  I don't recall.
    Q.  Was there a lawsuit as a result of that accident?
    A.  I don't recall.  There must have been.  It had to be.  I was there with a lawyer, of course.
        . . .
    Q.  Okay.  Were you treated medically?
    A.  Yes.
    Q.  By whom were you treated medically.
    A.  I don't remember.  I can't recall.
    Q.  Were you taken from the scene of the accident by ambulance?
    A.  No.
    Q.  You went to the hospital on your own.
    A.  Yes.
    Q.  What hospital did you go to?
    A.  I do not recall.

(Transcript of April 21, 2005, page 32 line 23, page 33 lines 1-9 and page 34 lines 9-19)

      Q.  I would agree with you that you're not a doctor.  How can you diagnose yourself with depression?
      A.  Because.
      Q.  I'm sorry.
      A.  Because I've been told by doctors that those are symptoms of depression.
      Q.  What doctors.
      A.  My past doctors.
      Q.  Who are your past doctors?
      A.  I don't recall them at this time.

(Transcript of April 21, 2005, page 76 lines 8-19)

      Q.  Have you been treated in the past for depression?
      A.  Yes, I have.
      Q.  And who were you treated in the past by?
      A.  I don't recall the doctors themselves.
      Q.  When were you treated in the past for depression?
      A.  In the '90s and in early 2000s.

(Transcript of April 21, 2005, page 77 lines 3-10)

      Q.  Have you been treated by any psychiatrist?
      A.  I had been.  I don't recall their names.
      Q.  More than one?
      A.  Yes.

(Transcript of April 21, 2005, page 78 lines 6-9)

      Q.  Okay.  Have you ever been treated for drug or alcohol abuse?
      A.  Not that I recall.  Mental stress, yes.
      Q.  And that was in the 1990s to 2000?
      A.  Yes.  And  I've been treated for emotional distress?
      Q.  Was there an incident that caused the emotional distress?
      A.  Employment related.  Stress regarding employment.  In my job, at my job, when I worked for the Vocational School District.
      Q.  Okay.  Was that a Workers' Compensation case?

>    A.   No.  It was just – I was just mentally ill, unable to
>         perform my duties.
>         . . .
>    Q.   Did someone tell you at that time that you were
>         mentally ill?
>    A.   Emotionally distressed.  Emotionally – I forget how
>         they stated it.
>    Q.   Okay.  Do you recall who stated it?
>    A.   A psychiatrist.  I don't remember his name
>         specifically.
>    Q.   Do you remember whether he was affiliated with a
>         specific hospital?
>    A.   He was a medical doctor, M.D.  I don't know.
>         . . .
>    Q.   Did he tell you that you should still come back for
>         further treatment?
>    A.   Yes.  He recommended I should.
>    Q.   Do you recall what medication he prescribed to you?
>    A.   I do not recall the medication?
>    Q.   How often did you have to take the medication?
>    A.   I do not recall the medication and I do not recall the
>         dosage.
>    Q.   Okay.  Do you recall taking medication, though, as
>         prescribed by him?
>    A.   I don't recall.  I'm drawing a blank when you're asking
>         me these questions.  I don't remember much of – I don't
>         remember.  I can't answer you correctly –

(Transcript of April 21, 2005, page 107 lines 22-24, page 108 lines 1-12 and lines 23-24, page 109 lines 1-9 and page 110 lines 8-23)

>    Q.   And what disability do you claim to have?
>    A.   Mental stress, depression, emotional functioning under
>         duress.
>    Q.   And once again, this is what you've been self-diagnoses
>         with or is there a doctor –
>    A.   I have had that diagnosis done before.
>    Q.   Okay.
>    A.   Emotional adjustments I think its called.  I can't be
>         sure.

(Transcript of April 21, 2005 page 112 lines 19-24 and page 113 lines 1-3)

-10-

> Q. Okay. At the last deposition you discussed or you mentioned a few times that you have a disability. What is the disability that you claim to have?
> A. Depression.
> Q. When were you diagnosed to have the disability of depression?
> A. I've had it around 1999, 2000, and so forth, and 2001
> Q. Who diagnosed you as having depression?
> A. I don't recall specifically.
>   . . .
> Q. When do you recall going and seeing a psychiatrist or psychologist and being treated for depression?
> A. The late '90s.
> Q. Who were the psychiatrists or psychologists?
> A. I can't recall their names.
> Q. Were they affiliated with a hospital?
> A. Not that I know of.
> Q. What town were they in?
> A. Hartford was one of them and Newington.
> Q. Would you agree to sign an authorization for me to obtain your medical and psychological records?
> A. No, I wouldn't agree to that.
> Q. Why?
> A. Because medical is confidential and I don't feel comfortable releasing the information to anyone.

(Transcript of April 26, 2005, page 165 lines 2-12 and 21-24, and page 166 lines 1-15).

> Q. Mr. Mulero, going back to your Exhibit No. 4, are you making a claim of emotional distress or depression as a result of not being hired by Consolidated School District of New Britain?
> A. Punitive damages under subset 11(b), that will be encompassed within that.
> Q. Are you masking a claim that you were emotionally distressed as a result of not receiving the job?
> A. I became more emotionally distressed.
> Q. Okay.
> A. More. The key word is more.

```
        Q.  So, you became worst off emotionally?  Is that what
            you're claiming?
        A.  I believe.  I'm not a doctor.  I can't diagnose or
            evaluate your question fairly.  So, it would not be
            fair for me to answer the question.
        Q.  But you have seen a doctor in the past for your
            depression?
        A.  I have seen doctors in the past for my depression.
        Q.  And although you're making this claim of being in a
            worst off situation emotionally and more depressed –
        A.  I can't evaluate the medical condition of worst.  It is
            unfair for me to answer that question.  I am not a
            doctor.
        Q.  But you're refusing to give me an authorization to get
            those medical reports?
        A.  Yes.  Because those are confidential files.
```

(Transcript of April 26, 2005, page 172 lines 9-24 and page 173 lines 1-15)

<u>ARGUMENT</u>:

The Defendant, pursuant to Rule 37 of the Federal Rules of Civil Procedure, respectfully requests an order compelling the Plaintiff to produce any records relating to the above mentioned subjects and to answer verbally, at a continuation of his deposition, each of such questions and any others which may reasonably be asked based upon Plaintiff's answers and any additional and any additional records produced.

The testimony sought in each case is either itself relevant to the subject matters involved in this action or is reasonably calculated to lead to discovery of admissible evidence.

DEFENDANT, ONE CONSOLIDATED SCHOOL
DISTRICT OF NEW BRITAIN, CT

By Office of Corporation Counsel

 /s/ Irena J. Urbaniak_____
Irena J. Urbaniak
Attorney for Defendant
Office of Corporation Counsel
City of New Britain
27 West Main Street
New Britain, Connecticut 06051
Tel. (860) 826-3420
Fax  (860) 826-3397
iurbaniak@ch.ci.new-britain.ct.us
Federal Bar Number ct01322

## CERTIFICATION

I hereby certify that on May 17, 2005, a copy of the above was mailed to the pro se plaintiff:

Felipe Mulero
746 Prospect Street
Wethersfield, Connecticut 06109

 /s/ Irena J. Urbaniak_____
Irena J. Urbaniak
Attorney at Law
